IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| IVORY MITCHELL | § | |
| v. | § | CIVIL ACTION NO. 6:09cv348 |
| MICHAEL SIZEMORE, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Ivory Mitchell, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceedings pursuant to 28 U.S.C. §636(c). As defendants, Mitchell named Warden Sizemore, Warden Webb, Major Kazmerczak, Lt. Moore, and an investigator from the Office of the Inspector General (OIG) named Lt. Bell; he later added former TDCJ officer Lisa Winston.

In his complaint and at an evidentiary hearing, Mitchell said that he was an administrative porter at the Powledge Unit. An officer named Lisa Winston sexually assaulted him on three occasions, forcing him to perform sexual acts upon her. He reported the assaults to officers named Barrett and Gaston, but they told him to keep his mouth shut because it was his word against hers, and he could not win because he was an inmate and she was an officer. Gaston told him that she "knew how to take care of it," but she lied.

Mitchell said that he filed a grievance, and that's when the cover-up began. He concedes that Winston was fired, but says that the prison officials made her say that the incidents were consensual, so that she would not face greater charges. Mitchell says that he then discovered that Gaston was in a sexual relationship with an inmate herself, and so she, Gaston, had to be terminated as well.

1

Mitchell states that Winston threatened to go to the searcher's desk and say that Mitchell had touched her inappropriately if he did not perform oral sex upon her. He says that he knew that if she reported him, there was not "a God in Heaven" who could help him, so he did everything that she told him to do. Mitchell states that Winston also extorted him for stamps and commissary items, like he was "her personal inmate," but that he was trying to find a way out. Finally, he gave her a form he had drawn him, which he describes as being "like a complaint," and told her that if she did not stop harassing him, he was going to file it. This seemed to scare her, Mitchell says, and so she took a "stress leave." Officer Barrett said that Winston would either stop harassing him or would not come back to work.

However, Mitchell says, Winston did come back, and gave the complaint which Mitchell had given her to the major, saying that Mitchell was trying to use the complaint to "control her." The major called him in and began questioning him about what was going on between Winston and himself. When the questioning was over, the major had Mitchell placed on transient status and contacted the Office of the Inspector General.

That same day, Mitchell says, an OIG investigator named Bell came to see him. Bell said that "if you lie to me, I will file charges on you myself." Mitchell told Bell what had happened between himself and Winston, and that he had asked Winston to stop. Bell asked him "are you gay?" Mitchell said no, but that he had other priorities, such as trying to go home. He told Bell that he had 20 evaluations from officers recommending his release on parole. Bell replied that he believed Mitchell and that he was going to give him a polygraph test the next morning. He also asked Mitchell to write a statement and not to say anything to anyone else.

Mitchell says that Bell did begin an investigation, and that for some reason, Winston confessed to the allegations. At that point, he says, the wardens, major, and lieutenant began trying to cover it up, and make it look like it had been a consensual relationship. He says that this would have allowed the officer an easy way out, so TDCJ would not be responsible for a civil rights violation.

Mitchell testified that Warden Sizemore told him that he would take care of the problem because it was not Mitchell's fault, but he did nothing. Sizemore also said that he would straighten out Mitchell's problems with the Parole Board, but again did nothing. He said that Warden Webb graded the disciplinary case which Mitchell received and sat in on an interview, but then denied Mitchell's grievances.

Next, Mitchell stated that Major Kazmerczak took away his legal papers to keep from defending himself. Specifically, he says that she took away a copy of the complaint which Mitchell had given to Winston. He said that he finally received it back, but it was after the disciplinary hearing, when it could do him no good.

Mitchell testified that Captain Cooper refused to run the disciplinary case against him, so the prison officials had to get Captain Lumpkin from the Gurney Unit to do it. At the hearing, he said, Captain Lumpkin told him to "shut up" and so he did.

Lt. Moore wrote the disciplinary case against Mitchell, but did not include Mitchell's statement. Mitchell said that he "knows better than to mess with lady officers." He said that Lt. Bell, the OIG investigator, lied to him about the polygraph and told Mitchell that he would take care of the situation, but did not. Mitchell conceded that Bell did get Winston fired, and that Winston was prosecuted in state court.

Mitchell stated that he did not sue Winston, but that he wanted to amend his complaint to add her as a defendant. He argued that he did not wish to be in the relationship with Winston and so he should not have received a disciplinary case for it.

## The TDCJ Records

At the evidentiary hearing, the Court received copies of certified, authenticated records from the prison. The records from the Office of the Inspector General show that on April 2, 2009, Mitchell told Kazmerczak that he had been participating in sexual acts with Winston. Officer Winston admitted the allegations and resigned the next day. A message from Kazmerczak to Bell dated April 2, 2009, set out the allegations, including Mitchell's statement that, as stated in the

message, "he had complied with all of Officer Winston's requests due to the fact that he was afraid that she would retaliate against him by implementing the disciplinary process which would have a detrimental effect on his chances for parole."

Mitchell signed a statement dated April 2, 2009, which was witnessed by Bell. This statement reads as follows:

> I had sexual relations three times with Lisa Winston, on 2/27/09 in the Captain's Lobby, I hail [sic] hands and hug this officer. On 3-1-09 I hug and feel on the officer, she unzipped her pant moved her white and blue panties over where I could lick her [sexual organ] and also I kiss her jaws. On 3-8-09 she put my hands on her ass for me to caress and feel it, I also kiss her on her lips and jaws.

Winston also made a statement to Bell, dated April 3, 2009. This statement says that "I hugged and kissed this offender more than once. Also I allowed him to perform oral sex on me, that offender is Ivory Mitchell." That same day, Winston sent an inter-office communication to the Human Resources Department, saying "I officer L. Winston is resign [sic] because of personal reason."

On or about May 22, 2009, an arrest warrant was issued for former TDCJ officer Lisa Winston, on charges of improper sexual activity with a person in custody. Winston was arrested on June 23, 2009, and taken to the Anderson County Jail.

Mitchell's disciplinary records show that he was charged with the offense of establishing an inappropriate relationship with Officer Winston. He was found guilty of this charge and received punishments of 45 days of recreation and commissary restrictions, 15 days of solitary confinement, a reduction in classification status from State Approved Trusty III to Line Class I, and the loss of 180 days of good time credits.

In his Step One grievance concerning the disciplinary case, Mitchell said that he reported the incident to the authorities in an attempt to get help and that all relations between himself and Winston were by force. The response was that the case had been reviewed and that there were no technical or procedural errors noted, and that the actions taken and penalties assessed were within guidelines.

In his Step Two appeal, Mitchell said that the charging officer had no knowledge of the incident or the statement he had given to the Office of the Inspector General, his statement to OIG was confidential, he was forced into the sexual acts with Winston, he has learned that Sgt. Gaston was also terminated for engaging in sexual relations with an inmate, he received ineffective assistance from his counsel substitute, Winston should be charged with sexual assault, and the disciplinary case against him should be dismissed. The response to this grievance was that the guilty verdict was supported by a preponderance of the evidence, all due process requirements were satisfied, and the punishment assessed was within agency guidelines.

<u>Legal Standards and Analysis</u>

Mitchell complains that Sizemore, Webb, Kazmerczak, and Moore sought to "cover up" the incident by making it appear consensual. He states that Sizemore promised him that he would take care of the problem, but then did nothing, and that Webb denied his grievances.

The fact that Sizemore apparently broke his promises to take care of the problem, and that Webb denied Mitchell's grievances, do not set out constitutional claims. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. <u>Geiger v. Jowers</u>, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* <u>Edmond v. Martin, et al.</u>, slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); <u>Thomas v. Lensing, et al.</u>, slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). Mitchell's claims against Sizemore and Webb are without merit.

Mitchell next complains that Major Kazmerczak took away a copy of a document which he had, which prevented him from using it in the disciplinary hearing. This document consisted of a statement which Mitchell had written himself. Mitchell does not dispute that he was allowed to testify at the hearing, and that he did present his defense that he was coerced into the sexual activities by Winston. The fact that he did not have a statement which he had written in support of this

defense does not show that he was denied due process, given that he was able to testify as to the facts of his defense as well as to the fact that he had turned the statement in to prison officials. Mitchell has not shown that this action by Kazmerczak amounted to a constitutional violation.

Next, Mitchell complains that when Moore wrote the case against him, the officer did not include Mitchell's statement in his own defense. The offense report, written by Moore, does not include any mention of Mitchell's defense; however, Mitchell has not shown that this omission prevented him from defending himself at the hearing. There is no constitutional violation in the fact that a prison disciplinary report, written by an officer to charge an inmate with an offense, does not include the inmate's statement in his own defense. The Supreme Court has held that notice of charges and an opportunity to be heard are the touchstones of due process in the context of prison disciplinary matters. Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974). In this case, Mitchell received notice of the charges, and was given an opportunity to be heard in the hearing which was conducted. He has not shown a violation of his constitutional rights by Lt. Moore.

Nor do Mitchell's general allegations of a "cover-up" amount to a constitutional violation. The fact that he was charged with a disciplinary case for establishing an inappropriate relationship with an officer does not show that prison authorities sought to cover up the matter; on the contrary, as Mitchell acknowledges, Officer Winston was criminally prosecuted for her role in the incident. Warden Baker explained at the evidentiary hearing that TDCJ policy under those circumstances is that "both parties get in trouble."

Furthermore, to the extent that Mitchell challenges the validity of the disciplinary case, including his complaint that it was unfair to charge him with the offense when he was forced to engage in the behavior, he has not shown that this case has been overturned or set aside. The Fifth Circuit has held that inmates cannot seek recovery of lost good time credits in a civil rights lawsuit under 42 U.S.C. §1983. Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998). Similarly, a prisoner cannot seek the overturning of a disciplinary case under Section 1983, nor seek damages for an improper disciplinary case until that case is overturned, expunged by executive order, or otherwise

declared invalid in a state collateral proceeding or through a federal habeas corpus writ. Clarke, 154 F.3d at 189, *citing* Edwards v. Balisok, 117 S.Ct. 1584, 1587-88 (1997). Instead, because good time credits implicate the length of confinement, habeas corpus is the proper means for presenting such claims to the federal courts. Because Mitchell has not shown that the disciplinary case has been overturned or otherwise set aside, he cannot seek such relief through the vehicle of a Section 1983 lawsuit. Mitchell's claims against Sizemore, Webb, Kazmerczak, and Moore are without merit.

Mitchell also sues Lt. Bell, the OIG investigator, saying that Bell lied to him about a polygraph. He indicates that Bell placed his life in danger and violated a confidentiality agreement, but provides no factual support for these assertions.

The fact that Bell told him that he would be given a polygraph, but this did not happen, is not a constitutional violation. This is particularly true in light of the fact that, as Mitchell says, Winston confessed to the improper conduct. Mitchell's claim on this point is without merit.

Mitchell's vague and conclusory claims about life endangerment and the violation of a confidentiality agreement also fail to set out constitutional violations. His classification file shows that he was placed in transient status during the investigation, and that he was transferred off of the Powledge Unit on June 1, 2009, thus removing him from any possible retaliation from officers or inmates at the Powledge Unit. The prison records contain no mention of a "confidentiality agreement," nor is it clear how any such agreement was violated. The Fifth Circuit has stated that civil rights claimants must state specific facts, not conclusory allegations. Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir. 1986); *see also* Baker v. Putnal, 75 F.3d 190, 195 (5th Cir. 1996) (Section 1983 actions against individual governmental officials require "claims of specific conduct and action giving rise to a constitutional violation," not merely conclusory assertions). Mitchell wholly failed to set out any specific facts showing a violation of his constitutional rights by Lt. Bell, and so his claims against Bell are without merit.

The final named Defendant is Lisa Winston, whom Mitchell added to his complaint at the evidentiary hearing. The courts have held that under certain circumstances, isolated instances of

conduct between a guard and an inmate which is sexual in nature do not necessarily implicate the Constitution. *See, e.g.*, Boddie v. Schnieder, 105 F.3d 857 (2nd Cir. 1997) (allegations that a female guard made a statement which could be interpreted as a "pass," touched his penis and made a sexual comment, and pressed her body against him several times did not amount to claims of constitutional dimensions); Copeland v. Nunan, slip op. no. 00-20063 (5th Cir., February 21, 2001) (not selected for full-text publication in the Federal Reporter) (available on WESTLAW at 2001 WL 274738) (prisoner alleged that a prison pharmacist fondled his penis on three occasions and also fondled his anus on one of these occasions; the district court denied qualified immunity, but the Fifth Circuit reversed, holding that the prisoner complained of nothing but *de minimis* injuries).

However, the allegations raised in the present case go far beyond the relatively minor episodes in these cases. Taking Mitchell's pleadings and testimony as true, he alleges that Officer Winston coerced him into performing oral sex upon her, perhaps the most intimate sexual activity short of intercourse. As such, it falls into the category of "severe" sexual abuse, which the Second Circuit said can be serious enough to constitute an Eighth Amendment violation. Boddie, 105 F.3d at 861. The Court has concluded that Mitchell's claims against Officer Winston require further judicial proceedings.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that

8

could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995). In this regard, the courts have held that a complaint may be legally frivolous where it "alleges the violation of a legal interest which clearly does not exist." Geiger v. Jowers, 404 F.3d 371, 373 (5th Cir. 2005).

In this case, Mitchell's claims against Warden Sizemore, Warden Webb, Major Kazmerczak, Lt. Moore, and Lt. Bell lack any arguable basis in law and fail to state a claim upon which relief may be granted. It is accordingly

ORDERED that the Plaintiff's claims against Warden Sizemore, Warden Webb, Major Kazmerczak, Lt. Moore, and Lt. Bell be and hereby are DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. It is further

ORDERED that Warden Sizemore, Warden Webb, Major Kazmerczak, Lt. Moore, and Lt. Bell are hereby DISMISSED as parties to this action. The dismissal of these claims and parties shall have no effect upon the Plaintiff's claims against former officer Lisa Winston.

So **ORDERED** and **SIGNED** this **18** day of **February, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE